UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIDGETTE LYNN SWYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:22 CV 927 CDP |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiff Bridgette Lynn Swyers brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  Because additional evidence considered by the Appeals Council renders the Commissioner's final decision not supported by substantial evidence on the record as a whole, I will reverse the decision and remand for further proceedings.

## Procedural History

On August 24, 2018, the Social Security Administration denied Swyers' May 2018 applications for DIB and SSI in which she claimed she became disabled on October 8, 2016, because of depression, traumatic brain injury, and injuries to

her head, neck, and back.  A hearing was held before an administrative law judge (ALJ) on September 16, 2019.  On October 22, 2019, the ALJ entered a decision denying Swyers' claims for benefits.  The Appeals Council granted Swyers' request to review the ALJ's decision and remanded the matter to the ALJ for further consideration.  Upon remand, a hearing was held on February 8, 2021, at which Swyers and a vocational expert (VE) testified.  On May 13, 2021, the ALJ entered a decision again denying Swyers' claims for benefits, finding that VE testimony supported a conclusion that Swyers could perform work that exists in significant numbers in the national economy.  On July 6, 2022, after consideration of additional evidence, the Appeals Council denied Swyers' request for review of the ALJ's decision.  The ALJ's May 2021 decision is thus the final decision of the Commissioner.

In this action for judicial review, Swyers contends that the ALJ failed to follow the Appeals Council's directives set out in its remand order.  Swyers also claims that the ALJ erred in finding that her impairment did not meet or equal § 12.02 of the Listings of Impairments.  Swyers also argues that the ALJ erred in failing to reopen her earlier application for benefits that she filed pro se in April 2017.  Finally, Swyers contends that consideration of new and material evidence submitted to the Appeals Council requires reversal of the ALJ's decision.  Swyers asks that I reverse the ALJ's decision and remand for further consideration.

## Medical Records and Other Evidence of Record

On October 8, 2016, Swyers was struck in the head by the hook of a towing strap that broke and snapped back from a towing vehicle, fracturing her skull and detaching part of her left ear.  She was twenty-three years old at the time of the accident.  She underwent emergency surgery that same date and several follow up surgeries over the following year.  She also underwent months of therapy for speech, cognition, and hearing.  She has permanent hearing loss in the left ear. Swyers claims that she cannot work because of constant migraine-type headaches, poor concentration, and memory issues.

A review of the extensive administrative record in this case shows the following[1]: Swyers participated in physical therapy for one month after her initial surgery.  She participated in speech therapy as well and was discharged in March 2017, at which time it was noted that Swyers continued to experience limitations in word finding, expressive aphasia, and reading comprehension.  (Tr. 617-32.)

Post-surgery, Swyers suffered from chronic infections involving her left ear, which prevented it from healing fully and correctly.  She underwent additional surgeries in December 2016 and January 2017 to clear the infection and to remove bone fragments that remained in the ear canal.  In January 2017, under the supervision of an infectious disease specialist, she began an eight-week regimen of

---

[1] The statements of material facts submitted by the parties (ECF 10-1, 11-1) do not adequately set out the facts necessary for resolution of Swyers' claims in this action.

intravenous antibiotics and transitioned to oral antibiotics in March 2017. Swyers complained of occasional tinnitus, headaches, ear pain, and imbalance during this period.

Swyers continued to experience infections, and her ENT, Dr. Mark Packer, noted in the summer of 2017 that her ear continued to drain and the ear canal was "nonhealing." (Tr. 1181, 1184.) In September 2017, Dr. Packer performed a revision tympanomastoidectomy, which involved, *inter alia*, skull base repair with bone graft,[2] excision of necrotic cartilage, and reconstruction of Swyers' eardrum using a prosthesis. (Tr. 1184-87.) Swyers' headaches worsened after the surgery, and she continued to experience occasional dizziness and ringing in her ears. Dr. Packer noted on January 2, 2018, that the temporal bone fracture was resolving but Swyers' tinnitus was inadequately controlled. Swyers underwent debridement of the mastoid cavity to remove debris, which Dr. Packer noted was affected by ongoing inflammation. Noting that the mastoidectomy was healing well, Dr. Packer permitted Swyers to resume full activities at that time. (Tr. 1206.)

On April 24, 2018, upon follow up examination and in response to Swyers' continued complaints of headaches, Dr. Packer diagnosed Swyers with inadequately controlled chronic paroxysmal headaches and paroxysmal hemicrania, which had been ongoing since the September 2017 surgery. (Tr. 1210-

---

[2] Before repair, the skull base defect resulted in the herniation and exposure of the brain's temporal lobe in the ear canal. (Tr. 115, Packer dep. at p. 26; Tr. 1184.)

12.)  Earlier, on April 5, 2018, Swyers' neurosurgeon, Dr. Jeffrey Sweeney, had referred Swyers to a neurology headache specialist for her post-traumatic bifrontal headaches.  (Tr. 3411.)[3]  Dr. Packer and Dr. Jacob Buhrow, the headache specialist, medically managed Swyers' headache condition thereafter.

During follow up appointments with Dr. Packer in August and December 2018, December 2019, and August 2020, Swyers continued to complain of chronic headaches, tinnitus, and occasional imbalance.  Likewise, from August 2018 through January 2021, Swyers complained to Dr. Buhrow and his nurse practitioner, Patricia Schrader, that she experienced near-constant headaches each month, with the headaches being debilitating several days each month.  She also complained of dizziness, balance issues, and impaired memory.  In February 2021, Dr. Buhrow's office began administering occipital nerve blocks.  (Tr. 4237.)  During a video nursing assessment on March 31, 2021, Swyers reported to Linda Schwieder, RN, that the two nerve blocks she had received to date provided only short-term relief of her headaches.  (Tr. 88.)

Swyers also regularly received chiropractic treatment.  From April 2017 through July 2018, and from October 2018 to early April 2019, Swyers received weekly treatment for, *inter alia*, intermittent flare-ups of moderate-to-severe headaches, with such treatment occasionally providing temporary relief.  She was

---

[3] With no surgical intervention indicated, Dr. Sweeney discharged Swyers from his care at that time and instructed her to follow up as needed.  (Tr. 3411-12.)

released from regular chiropractic treatment on April 1, 2019, with instruction to return as needed for supportive care.  (Tr. 3870.)

As to Swyers' mental impairments, the record shows that throughout their treatment of Swyers, Dr. Buhrow and NP Schrader repeatedly recommended that she receive psychotherapy, but Swyers reported that she could not find a therapist that accepted her Medicaid insurance.  She did, however, visit psychiatrist Dr. Roomana Arain in July 2018 and reported experiencing depression, panic attacks, poor sleep, poor memory, and distractibility.  Mental status examination showed that Swyers had depressed mood and blunted affect.  Her recent and remote memory were intact, as well as her judgment and insight.  Swyers' language was intact, but Dr. Arain noted that she was distracted.  Dr. Arain diagnosed Swyers with major depressive disorder, moderate, recurrent; and generalized anxiety disorder.  Dr. Arain prescribed Lexapro and recommended individual therapy.  (Tr. 3413-16.)  There are no other records from Dr. Arain in the administrative record.

On August 7, 2018, Swyers told Dr. Buhrow that she had decided on her own to stop taking Lexapro.  (Tr. 3715.)

On August 21, 2018, Swyers underwent a consultative psychological evaluation for disability determinations.  Mental status examination was normal except for delayed motor behavior, restricted affect, and complaints of headaches. Swyers' performance on the Wechsler Memory Scale-IV showed her memory

functioning as borderline to average, which suggested mild to moderate impairment. Thomas Spencer, Psy. D., diagnosed Swyers with mild neurocognitive disorder and "other specified trauma- and stressor-related disorder." Based on review of the medical records, Swyers' disability function report, results from the WMS-IV, and interviews of Swyers and her mother, Dr. Spencer opined that Swyers had moderate to marked impairment in her ability to learn, recall, and use information; to consistently stay on task; and to relate to and work with others on a consistent basis. Dr. Spencer also opined that Swyers may need assistance managing benefits. (Tr. 1397-1400.)

Additional specific facts are discussed below as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for benefits under the Social Security Act, Swyers must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that she is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is

found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is not based on legal error and there is substantial evidence on the record as a whole supporting the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   The ALJ's Decision

The ALJ determined that Swyers met the insured status requirements through March 31, 2022, and had not engaged in substantial gainful activity since October 8, 2016, the alleged onset date of disability. The ALJ found that Swyers' neurocognitive disorder, post-traumatic stress disorder, depression, anxiety, traumatic brain injury, and chronic post-traumatic episodic tension-type migraine were severe impairments but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19.)[4] The ALJ found that Swyers had the RFC to perform work at all exertional levels but with several non-exertional limitations:

> The claimant can never work at unprotected heights, operate moving mechanical parts, in extreme heat. She can never be exposed to concentrated levels of vibration. The claimant can work in moderate noise. The claimant can perform simple, routine tasks with simple work related decisions, occasional interaction with the public, coworkers, and supervisors. The claimant can have occasional

---

[4] The ALJ also determined that Swyers' gastroesophageal reflux disease, asthma, partial hearing loss on the left, and tinnitus were not severe impairments. (Tr. 19.) Swyers does not challenge this determination.

>changes in the work setting and would be off task 10 percent of the
time in an 8-hour work day in additional to normal breaks.

(Tr. 22.) The ALJ determined that Swyers' RFC precluded her from performing her past relevant work as a fast-food worker, kitchen helper, and laborer. (Tr. 25.)

Considering Swyers' RFC, age, education, and work experience, the ALJ determined that VE testimony supported a conclusion that Swyers could perform work as it exists in significant numbers in the national economy, and specifically, as a housekeeping cleaner, routing clerk, and holding machine operator. The ALJ thus found that Swyers was not under a disability from October 8, 2016, through the date of the decision. (Tr. 25-26.)

C.     Failure to Reopen Prior Application

Swyers filed a pro se application for benefits in April 2017, alleging disability as of the date of the accident, October 8, 2016. That application was denied July 17, 2017, and Swyers did not pursue it further. In conjunction with her current applications for benefits, Swyers requested that her earlier application be reopened. (Tr. 179, 289-92, 544.) In her October 2019 decision, the ALJ denied Swyers' request to reopen and considered her disability claim as of July 18, 2017, the date after the earlier decision, concluding that Swyers had not been under a disability "from July 18, 2017," through the date of the decision. (Tr. 259, 271.)

After remand by the Appeals Council and after another hearing on the current applications, the ALJ rendered a new decision on May 18, 2021, wherein

she considered Swyers' claims for benefits as of October 8, 2016, the date of the accident and the alleged onset date of disability claimed in her April 2017 pro se application as well as in her current applications. After review of the record, the ALJ concluded that Swyers had not been under a disability "from October 8, 2016," through the date of the decision. (Tr. 26.)

Swyers argues that the ALJ erred in failing to reopen the earlier pro se application for benefits.

It is well settled that a district court has no jurisdiction to review the Commissioner's decision not to reopen a prior determination. *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *Howard v. Apfel*, 17 F. Supp. 2d 955, 965 (W.D. Mo. 1998). A narrow exception exists, however, in cases where the Commissioner reconsiders the merits of an application previously denied. *Jelinek v. Heckler*, 764 F.2d 507, 508 (8th Cir. 1985); *Howard*, 17 F. Supp. 2d at 965-66. Determining whether a claimant is disabled from the alleged onset date asserted in an earlier denied application constitutes a reconsideration of the merits of that application and a constructive reopening of that case. *Jelinek*, 764 F.2d at 508 (citing *McGowen v. Harris*, 666 F.2d 60, 65-66 (4th Cir. 1981)); *Howard*, 17 F. Supp. 2d at 966.

Here, although the ALJ had previously determined not to reopen Swyers' pro se application, she nevertheless considered the merits of that application by

later determining whether Swyers was disabled as of October 8, 2016, the onset date alleged in that application. The ALJ therefore constructively reopened the earlier denied application. And because this constructive reopening occurred within the time prescribed by the Regulations, that is, within four years of the initial denial, the ALJ's constructive reopening of the case did not exceed her authority. *See King v. Chater*, 90 F.3d 323, 325 (8th Cir. 1996).

Accordingly, this Court has jurisdiction to review the Commissioner's final decision denying Swyers' claims for benefits with a disability onset date of October 8, 2016. *Jelinek*, 764 F.2d at 508-09.

D.   Additional Evidence Submitted to the Appeals Council

With her request for review of the ALJ's May 2021 decision, Swyers submitted additional evidence to the Appeals Council, namely November 2020 deposition testimony of Dr. Sweeney, January 2021 deposition testimony of Dr. Packer, and an April 2021 Life Care Plan authored by Nurse Schwieger – all of which were prepared in relation to a civil action brought by Swyers in the Circuit Court of Franklin County, Missouri. (Tr. 35-174.) The Appeals Council did not exhibit the evidence, stating that the evidence did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2.) On judicial review, Swyers contends that consideration of the Life Care Plan warrants reversal of the ALJ's decision.

Under 20 C.F.R. §§ 404.970, 416.1470,

(a) The Appeals Council will review a case if: [. . . ]

(5) Subject to [a good cause standard], the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and *there is a reasonable probability that the additional evidence would change the outcome of the decision.*

(Emphasis added.) As noted by the court in *Thor S. v. Berryhill*, the plain language of this Regulation shows that for the Appeals Council to make a determination that additional evidence would not change the outcome of a hearing decision, it "would, necessarily, have needed to consider the additional evidence." No. 18-cv-538-NEB-KMM, 2018 WL 7141873, at *5 (D. Minn. Dec. 13, 2018), *report and recommendation adopted*, No. 18-CV-538 (NEB/KMM), 2019 WL 368459 (D. Minn. Jan. 30, 2019). And when the Appeals Council considers additional evidence in determining to deny a claimant's request for review, I must consider that additional evidence in determining whether the ALJ's decision is supported by substantial evidence. *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013).

Here, the Appeals Council acknowledged the additional evidence and stated only that the evidence did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) Because the Appeals Council would necessarily have needed to consider the evidence in order to make that determination, I consider the evidence here in determining whether the ALJ's

- 14 -

decision is supported by substantial evidence.

Dr. Sweeney is the neurosurgeon who performed emergency surgery on Swyers' skull fracture on October 8, 2016. He continued to see Swyers for follow up through April 2018 and saw her once more in August 2020. Dr. Sweeney discharged Swyers from his care in April 2018 because Swyers' main issue had become migraine headaches, which he could not manage from a neurosurgical standpoint. He referred her to a neurology headache specialist for appropriate management. (Tr. 155, dep. pp. 35-36.) At his deposition, Dr. Sweeney primarily summarized his medical records that the ALJ had before her at the time of the administrative hearing and decision. He testified that his examination of Swyers in August 2020 showed that her cognitive abilities appeared intact, her memory was good, and she was neurologically intact without evidence of poor coordination or falling. She could stand and ambulate through the office with no problem. (Tr. 159-60, dep. pp. 49-53.) He cautioned, however, that this examination was cursory in nature and not an in-depth neurocognitive evaluation. (Tr. 159, dep. pp. 50-51.) As to Swyers' ability to work, Dr. Sweeney opined that "there are certainly things that she can do. . . . I don't know what those things would be. That would be up to her. But I think that there are certainly jobs that she could hold down and do a great job at." (Tr. 160, dep. p. 55 (cleaned up).)

Dr. Packer is a neurotologist[5] who treated Swyers' ear injury – including infection control, debridement, and cerumen removal – and performed surgical repairs to the eardrum and mastoid. He continued to see Swyers for follow up through December 2020. Like Dr. Sweeney, Dr. Packer primarily testified at his deposition to a summary of his medical records that the ALJ had before her. In explaining his January 2018 treatment note encouraging Swyers to resume full activity, he testified that there were no contraindications preventing Swyers from returning at that time to the labor market full time. He testified that up to that point, she had "a lot of what would be post-concussive symptoms," including chronic headaches, dizziness, difficulty with temperature control, and fatigue. (Tr. 119, dep. pp. 41-42.) He also testified that he had concluded in August 2018 that Swyers had developed a kind of "post-concussive, post-traumatic brain injury headache that was chronic" (Tr. 119, dep. p. 43); but he also observed that in 2019 and 2020, Swyers' vertigo "straightened out" when her "migraines tended to get better." (Tr. 127, dep. p. 75.)

Nurse Schwieger prepared a Life Care Plan at the request of Swyers' attorney. For purposes of preparing the report, Nurse Schwieger reviewed Drs. Sweeney's and Packer's treatment records, as well as the records of several other

---

[5] A neurotologist is an ENT who focuses on neurological-related and inner ear concerns. *Do I Need an Otologist/Neurotoloogist?*, Duke Health, https://www.dukehealth.org/blog/do-i-need-otologistneurotologist (last updated Nov. 4, 2022) (last visited Mar. 27, 2023).

physicians and healthcare providers. She also reviewed Drs. Sweeney's and Packer's depositions, Swyers' deposition, and the deposition of Swyers' boyfriend. Finally, on March 31, 2021, Nurse Schwieger conducted a video nursing assessment. From this information, Nurse Schwieger rendered the following nursing diagnoses: impaired balance, impaired memory, impaired home maintenance, impaired social interaction, and risk for situational low self-esteem. (Tr. 92.) She noted that Swyers neither drove nor performed household duties and tasks because of daily migraine headaches, tinnitus, balance concerns, fatigue, impaired memory, decreased safety awareness, and decreased initiation. Nurse Schwieger opined that because of her impairments, Swyers struggled to live independently and required oversight and supervision, which Swyers' mother provided at that time. (Tr. 95-96.)

     The new evidence presented to and considered by the Appeals Council erodes the ALJ's RFC determination to a degree that renders the ALJ's conclusion of non-disability since October 8, 2016, not supported by substantial evidence on the record as a whole. Nurse Schwieger based her opinions on her review of the extensive medical evidence of record, the opinions of Swyers' treating specialists, observations of Swyers' abilities and limitations by third parties, and her own nursing assessment of Swyers. And while Drs. Sweeney's and Packer's 2020 and 2021 deposition testimony included their opinions of Swyers' then-current

abilities, which would appear to support the ALJ's determination of non-disability *at that time*, their testimony also included opinions and observations of Swyers' limitations from the date of the accident in October 2016 through 2017 and into 2018, including word-finding difficulties, uncontrolled and debilitating migraine-type headaches with aura and photophobia, medication side-effects, ongoing pain and pus drainage, dizziness, fatigue, tinnitus, and severe hearing loss.

The Commissioner may award disability benefits "either on a continuing basis or for a 'closed' period." *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992). The Eighth Circuit "has consistently held that disability is not an 'all or nothing' proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time." *Id.* "If evidence presented shows that a plaintiff was unable to work for at least twelve months, but recovered the ability to work before the decision on her claim is made, she may be eligible for disability benefits for the time she was unable to work." *Sarah B. v. Saul*, No. 4:19-CV-1761 JMB, 2020 WL 3172466, at *7 (E.D. Mo. June 15, 2020). To qualify for a closed period of disability, the disabling condition must last for at least twelve months. *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).

The full administrative record, which now includes the opinion evidence considered by the Appeals Council, contains substantial evidence that could

support a finding of disability for a closed period beginning October 8, 2016, thus rendering the ALJ's conclusion that Swyers had not been under a disability "from October 8, 2016, through the date of [the] decision" not supported by substantial evidence on the record as a whole. But it is for the ALJ to consider opinion evidence in the first instance and resolve any conflicts in the evidence of record. *Pearsall*, 274 F.3d at 1219. I will therefore remand the matter to the Commissioner for consideration of the new medical opinion evidence in accordance with the Regulations and in conjunction with all the other evidence of record. Upon remand, the ALJ is encouraged to consider whether Swyers may be entitled to at least a closed period of disability, especially given the constructive reopening of Swyers' pro se application and the consideration of disability with an onset date of October 8, 2016.

E.    Appeals Council's Remand Order

Because consideration of the additional evidence before the Appeals Council in conjunction with the other evidence of record will require the ALJ to further evaluate Swyers' symptoms of pain and difficulties with concentration, further consider Dr. Spencer's medical opinion, and further consider Swyers' RFC as directed by the Appeals Council in its remand order (*see* Tr. 281-84), I need not address Swyers' claim here that the ALJ failed to comply with the remand order in her May 2021 decision. On remand, the ALJ shall also specifically address

whether Swyers' cognitive impairment meets or equals Listing 12.02, given that the ALJ failed to acknowledge that Listing in her decision despite counsel's specific argument at the administrative hearing that Swyers' impairment met Listing 12.02.  (*See* Tr. 19-21, 178-79.)

Accordingly, for all of the above stated reasons,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2023.